Ellen Mayhew, and I think we're ready to begin. Good morning, and may it please the Court. The District Court erred in not enforcing an arbitration agreement in the subway franchise application signed and submitted by Mr. Garam Ellen Mayhew. The District Court found that there was no consideration to enforce. In fact, however, Your Honors, there were two forms of consideration to support the promise to abide by the terms and conditions of that agreement, including an arbitration clause as well as other clauses such as confidentiality of any business information that is learned. The first form of consideration, Your Honors, was a clear benefit to Mr. Ellen Mayhew. That is, his agreement to the terms and conditions of that agreement, including the arbitration clause, was necessary even for Doctors Associates, the franchisor, to even receive and consider his application. His business deal to buy an existing subway franchise could not proceed at all unless he submitted the application and agreed with its mandatory terms. So the consideration is that he'll be deemed eligible to be considered? That is correct. In fact, when he submitted it, his status, in fact, changed to become an applicant or a prospective franchisee, without which he couldn't have. If he had simply submitted a letter asking to be approved, Doctors Associates would not have accepted that letter, and his status would not have changed, and he could not have moved forward. In fact, it did move forward. He was interviewed, took an aptitude test, saw a training video before he was turned down and sued in court because he said those were impermissible reasons for being turned down. We cite a case from the Vermont Supreme Court called Lloyd's, which canvases the law of expectation or hope for a future benefit is consideration for a promise. And that principle has been applied in the application context by the New Jersey Supreme Court in the Martindale case and other cases where, for example, that was an employment application. And the mere willingness to accept an application is consideration for the terms and conditions in that application, including an arbitration clause. In terms of the choice of law, you're saying it doesn't matter? What were you—the law is the same everywhere, Vermont is as good as Colorado, Connecticut? Correct. If you read Amdur and the restatement, there's really no—the law of consideration is sort of longstanding, and the modern view is what I'm referring to, and there's really no substantive difference from state to state. And so, this was, in fact, not, therefore, a gratuitous document, which was submitted without any legal relevance. It should be enforced. Moreover, the law of consideration says there not even need to be an even exchange. There only needs to be a benefit to the promisor and nothing else, and it can be slight. For example, the Colorado Supreme Court, Judge Janet Hall referred to Colorado law, the Luckt case, we cite L-U-C-H-T, which is terms with respect to an employment at will, which could be terminated at any time. There's no promise by the employer in that instance, and it was enforced. But in fact, while there would be consideration, doctors associates need not itself have promised anything or suffered a detriment. In fact, it did. This is the second form of consideration which the district court did not accept, but we believe that was error. That is, there was, in fact, a mutual agreement to arbitrate. Now, there's two aspects to that. JUSTICE KENNEDY That doesn't say so, does it? The actual arbitration clause makes no reference to anything that doctors associates promises by way of agreeing to arbitrate. MR. SESNO So, Your Honor, and this is addressed by the Hilton Head Hospital with identical language in applications where it is true. In applications like in the O'Neill case, and like in here, the applicant says, I agree to submit to arbitration. But as the Fourth Circuit said, and this Fourth Circuit followed that up in the Johnson v. Circuit City case, simply when an employer, or in this case a franchisor, says, I will in fact, stating that if there are any claims by the applicant, setting aside whether any claims by the franchisor or the employer, any claims by the applicant have been agreed to be resolved by binding arbitration. JUSTICE KENNEDY I'm not sure. I mean, it would be perfectly coherent to say that the applicant promises to abide by arbitration. It doesn't mean that the other side necessarily, so they file for arbitration. And you say, no, thank you. I imagine that in that case that you cite, the employer resisted. That's how it got to be a holding of the Court. The employer said, no, no, we never promised anything. MR. SESNO No, no. In fact, in O'Neill, it was the difference. In fact, O'Neill, the Fourth Circuit, there's really no reason, I think, for this Court to deviate from the Fourth Circuit that said, if the contract to arbitrate, and there the employer was trying to enforce it because the employee sued. And the contract to arbitrate was proffered by the employer saying, you will settle all claims by arbitration, by binding arbitration, which is what we have here. It would be settle all claims by binding arbitration. And that, and the Fourth Circuit said, such proffer clearly implies that the employer and employee would be bound by the arbitration process. If an employer says to the employee, you must, we must resolve all your claims by binding arbitration, it cannot then turn around and say, I'm going to vacate the arbitration award because I didn't agree to arbitration. That would be, I think, an unreasonable reading of the circumstance in an application that's submitted by one party. This is all fascinating. It might make a great law student note, but you don't really need this, do you? We don't, because the mere benefit from the willingness to accept the application by itself is sufficient consideration. This is really an alternative argument. There's even a third alternative argument, which is the Bennett case from the Third Circuit, from the Sixth Circuit, I meant, which said that similar language, where an applicant to settle any and all claims by binding arbitration, which is what we have here, also implies that even if, in this case, doctor's associates had a claim, that there's been an agreement. In fact, the clause here says that the particular arbitral body is at the discretion of the party first filing a demand for arbitration, and that the parties mutually will agree upon an alternative agency if those, if the AAA and the ADRC are no longer around. So there are multiple forms of consideration. The amount of consideration needs only be slight. Your Honor, you're about to run out of time, but you spent a lot of time, I thought, talking about that it was improper for the court to even consider this issue of consideration, and that ought to have been decided by the arbitrator. Yes. You don't seem to be saying that now. If the red light, I can, we have alternative arguments, Your Honor, and in fact, because there is a delegation clause, and the Supreme Court in Renta Center, for example, has said in circumstances of validity and forcibility, we have, as our initial argument, said that, but it's an academic argument except for the arguments that Mr. Cohen has made that were not even reached by the district court, fraud in the inducement, the scope of the arbitration clause. But it is, I think, an open question about whether consideration is the kind of formation or a question about whether there's even an existence of an agreement, which There's a wonderful decision by Judge Leeson, right? Yes, in the Eastern District of Pennsylvania. Yes. Fascinating. It's the all-state case, Your Honor. Yes. But it is, I mean, it is a rather peculiar position, I think, and let me hear your reaction to this. What you're really saying, if consideration is for the arbitrator, is that if I write a letter to my friend and business partner that I've done all kinds of business with I mean, I've recently read about this American Arbitration Association. It sounds great. And, you know, we've been friends for so long, it would be a shame to go to court. I promise you that if I ever have any beef with you, I'll submit it to the AAA and not to a court. Yes. And then later I change my mind, think that may not be such a great idea when I actually have a dispute. It's a totally gratuitous promise. The other side doesn't respond at all, gives me nothing, just thinks, what a peculiar letter, I'll file it away. What, that, it would then be for, the fact that I made that promise gets me to arbitration at least enough that the arbitrator decides whether, you know, my story about, oh, he actually did respond or something else is true. I mean, is that? No, that's a very good question, Your Honor, and in fact, you know, the Allstate case, which is cited in our reply brief, kind of talks about the different functions of consideration. And one may be more akin to what the U.S. Supreme Court has said in Buckeye cash checking and, you know, in Granite Rock, does, is there even an agreement? Is there sufficient consideration to understand that you've actually reached some kind of a business arrangement with somebody? As opposed to this situation where he clearly knew what the terms were, there was clearly assent and agreed to arbitrate the issue of arbitrability, and so there's no question about that there is in fact this mutual agreement, and then it's more akin to the Renta Center where unconscionability was said to vitiate assent, and the Supreme Court said, no, that goes to the arbitrator under, and this type of situation, I think, here where he's saying, well, we all know what the agreement is, the initial agreement, could potentially, it is a gray area, and it hasn't been decided by any court, which is why we raise it, it could potentially go more toward validity and forcibility, which is delicate, and in fact, Judge Arterton, in a different case. I mean, it is a fascinating issue, and it is, perhaps, if we agree with you on your other issue, not necessary for us to decide it, and my question is, or is it? In other words, not only are you saying it is supposed to be for the arbitrator in some theoretical universe, but is there some jurisdictional bar, is there some reason why we need to address that issue if we were otherwise persuaded that the court got the issue of arbitrability right? Because really, what you're saying is, we're happy to take the risk of going to the arbitrator and having it come out differently because this judge had no business even addressing this. We are willing to take that risk, and in some respects, it is a question of whether the court is even authorized to reach it, which is why we briefed it, even though there is an academic aspect to it and is a gray area because I don't think the U.S. Supreme Court has ever, or even this case in contact, ever really addressed consideration. So it may need to be reached in that sense, and it has to be reached if the court, well, we disagree with you about whether the court got it right, then the question of whether the court and us, and we, have any business dealing with it. My question is really, is this some sort of quasi-jurisdictional or jurisdictional matter such that we must address it, or can we legitimately say, if we agree with you on the consideration issue, that this is an easy call? I know, it's sort of like the presumed jurisdiction cases. But it is different because I'm sure you think that we should decide that there's consideration that any rational arbitrator would decide there's consideration, et cetera, et cetera. So I leave that to your discretion, but it may be, in fact, that the court does have to address that issue. But if the court — Possibly not academic anymore. Well, from our — I think from our perspective, it may be. But if the court — Instead of winning right here and now and being done with it, if you're right on the other issue, you then have to go through an arbitration proceeding to get to the same point. Yes, which we're confident we would prevail before any arbitrator on an issue this clear. And of course, if the court decides that it must decide the consideration issue and decides it in our favor, I can't see where anyone, in terms of the fact that the court itself decided, which is what Mr. Cohen wants, would be the subject of any further petition on that issue because we would have gotten what we want. We're not supposed to think that way. I know. I know. Maybe we're wrong. No one's going to — Just saying. All right. I will reserve my time. Thank you. May it please the Court, Jeffrey Cohen for the appellee, Gary Malamehu. Of course, we see the case very differently than the appellant, at least with regard to the district court. We think the district court must be affirmed. The district court got it right, especially on the consideration issue. And I think what perked up my ears was the response by Judge Livingston that the agreement or this signing of the I agree to arbitration by Mr. Malamehu makes him deemed eligible to be considered. And that's important. Deemed. Well, deemed by whom and for what? Because it implies that it is coupled with a promise to review. Why is that even necessary in the realm of peppercorns and easy assumptions of what constitutes consideration? Mr. Malamehu sits at his computer wanting to submit this application, wanting to submit it by computer because it's convenient. He'd be happy to do it some other way, but this is more convenient, and he's ready to push the button, and it says, stop. You may not submit this by computer. Oh, why not? You have to first click the thing that says I agree to arbitrate, and then you click the thing. Hasn't he already gotten a benefit? Haven't they already changed their position by just letting him submit in this convenient way from his desk at home? No. Why not? Because the doctors associates need not review or even notice that that was submitted. So what? So there's no real benefit. They let him do something that he was otherwise not authorized to do. Otherwise he would have to type it up, submit it some other way, take it to the post office, put a $0.50 stamp on it, and he can instead have the convenience of doing it this way, but only if he clicks that box and agrees. First it's not bargained for. Just because you get a benefit doesn't mean it's the benefit that you're looking for, which is really the review. Why do you have to be looking for it? He is looking for it. He wants to do this. He's about to submit the application by computer, and he's told you may not unless you click this box. Hmm. I guess I want to submit it by computer. I'll click the box. Understood, Your Honor. But the point is, is that he, that could be anything. In other words, it was then the keystroke becomes consideration. The filling it out becomes consideration. And just being able to open his computer and look at the website becomes consideration. Make that any kind of condition, I hear that he could have done it by letter. I don't know if that's in the record, but that's what is being said here. He opened his computer on his own. They didn't ask him to do that. He made the keystrokes on his own. They didn't ask him to do that. Now he wants to file. Indeed. But now they say, now we want you to do something special for us before you can do that. Well, but they say that you can do something special for us in a myriad of ways. Not just clicking the box with regard to the arbitration issue. It would be filling it out. It would be getting up in the morning. It would be turning on the computer. It would be actually clicking the enter button on the computer itself. Just like if you were to mail it. Mailing the application in, then, or being allowed to mail it in, as opposed to going to their office. By the way, didn't you sue them in Colorado for breach of contract precisely for not considering the application? Yeah, that's still. You said there was an implied obligation on them to, not only to consider it, but to consider it in good faith and fairly. The trial court deals with that in footnote two of its opinion. And of course, the court's aware that we completed the alternative. So that we can advance very much even contradictory theories to the trial court in Colorado and argue, nevertheless, to the court in Connecticut that there was no agreement and there was no consideration. But the complaint says that after you submitted the application, Subway began taking actions in consideration of the application. Well, the question becomes, as the trial court analyzes, that the fact that actions occurred afterwards is not the same as its actual causation. And the language in our complaint was, again, filed as a complaint. And alternative theories can be advanced. Judge Hall, in footnote two of her opinion, explains the judicial, I think the court's getting to the judicial estoppel or judicial admission argument, and that at the time, we had the Burr decision, which Judge Hall had decided on this very question. So we felt constrained to follow that opinion in the complaint itself. Otherwise, we'd have some potential Rule 11 issues. But nevertheless, Judge Hall explains why just continuing with an action after the application is submitted is not the same as having doctors associates bound to do so and be contractually obligated to do so. Your adversary says this is a very interesting contract issue. He says it's not for us. It's for the arbitrator. And why isn't he right about that? Well, there's substantial Second Circuit law on this question. And it's quite clear that this court has consistently held, as recently as January of this year, that it's up to a court to decide whether a contract is formed, not an arbitrator. I mean, the rules of the AAA are not the 11th Commandment, frankly. This court, established by the Constitution, decides whether there's contract or not. And this panel, and panels before it in the Circuit, have consistently held that it's for the court to decide. There's a circularity and a tautological reasoning that Appellant puts forth. If there is an agreement, then there's a delegation clause that's incorporated by the AAA rules. If there's no agreement, there's no delegation. So really, the threshold point here is to take a look at the arbitration clause, and I think Judge Lynch was right, that you have a unilateral clause. And that's, in and of itself, is not sufficient to support, because there's no mutual promise. You have to look elsewhere for this consideration. And the first place that Appellant looks is for the promise to review. And if, and that's why we submitted earlier this week, the Pacelli declaration versus the Cousin's second declaration, in this case, in this record. Because in the Pacelli affidavit, Dr. Associates specifically says, there is an agreement or obligation to review. He says that. Two years later, in real time, Dr. Associates leaves that out of the Cousin's affidavit. They merely say that it's in return, whatever that means. So we see a change in position by Dr. Associates, from an agreement to review to an agreement to do nothing. And that backs into this benefit argument. Because if they don't feel that they have any obligation to do anything, then it's as if Mr. Halameu is submitting an application in a dark room to no one to do nothing. And this is analyzed by the trial court. Just because A follows B doesn't mean that B causes A. And that's the key here. What's the mutuality? What's the bargain for exchange? If I ask you, you can accept by performance, if I ask you to do something and make a promise associated with that, and you then do what I asked you to do, that can be an acceptance with consideration. Not exactly, because consideration is considered at the time of contract formation. But the contract isn't formed until it's accepted by the other side. And if they can accept by performance, and they do perform, they may not have performed equitably, or they may have performed in a way that violates federal law. But it's clear that they did accept the application. They did consider it. They did give him an answer. And the answer was no. Well, I think the court is referring to these reward situations, where you have, I'll give you $5,000 if you bring me my cat. But the offeror- I'll give you arbitration if you consider my application. Well, but that's not exactly what the offeror is master of his offer. And it determines what performance or promise he'll take in return. And one of the promises that he's looking for, certainly, is to have his application considered and reviewed. But just because it is reviewed doesn't necessarily mean doctor's associates had the obligation to review it. But why would it matter if they have the obligation if they accept by performance? If what he wants is for them to review the application, and they do. They have thereby accepted that much of it. It's not much of an offer. Neither side is bound by anything that happens at that stage to actually form an agreement that Mr. Alameyhu will get a franchise, and he's not obligated to take it if they offer it to him. We're at the arbitration clause stage. I mean, let's separate out, as the Supreme Court has instructed, and focus just on the arbitration language. There could be no doubt that there's an exchange of promises to enforce an arbitration clause, because that's something that occurs in the future, not in the present. And what Mr. Alameyhu is looking for is a return promise that doctor's associates would arbitrate. And he never got that. Where does it say that? Well, because in the arbitration clause itself, you can't perform that in the present. I mean, you know, it only comes up at some future time. So I think the Court's got to take a look at consideration at the time of the contract formation. Thank you. Thank you. Very briefly, clearly, Mr. Alameyhu thought he was getting a benefit by submitting this. He knew he couldn't proceed forward with buying the existing franchise. He agreed to a background check, opening up his financial information, gave his Social Security number. These were all things that had quite a bit of formality to it. He understood that this is what he needed to do. And I would submit your honor that I think the Declaration of David Cousins, who is in-house counsel for our client, Joint Appendix 151 and 152, clearly lays out this process and how it's a critical and necessary piece of it and says, as Mr. Cohen, in fact, practically quoted on 152 of the appendix, in return for the provision of this information, doctor's associates considers the information and decides whether or not to grant the applicant the right to the franchise. Mr. Cohen refers to a declaration in an earlier doctor's associates case which was referred to by Judge Hall in her decision, but not in Mr. Cohen's brief until he filed a Rule 28J letter, where he says, well, in that affidavit, it said, in consideration for the information, doctor's associates considers the information. In this case, it says in return it considers. And, of course, there was, if there's any doubt, there was performance. So if there are no other questions, I would ask this Court to reverse and ask that the petition to enforce the arbitration clause be directed to be granted. Thank you. Thank you, Beth. Nicely argued.